3-22-0203 LAKKO Properties Appellant v. M-OK Freight Lines Corp. Mr. Del Nero, you may proceed. Good morning, Your Honor, and may it please the Court. This case comes to this Court in certain court... Could you tell us who you are for the record? Yes, Your Honor. My name is John Del Nero and it's spelled D-E-L-N-E-R-O and I represent the Appellant LAKKO Properties. Thank you. As I mentioned, this case comes to this Court in circuit court for the 18th Judicial Circuit in DuPage County. That Court held on February 18, 2022, that plaintiff's judgment was satisfied without the payment of professional fees and only statutory interest, even though the underlying lease provided for fees as well as 12% interest. That ruling should be reversed. Neither the law nor the facts are seriously in dispute in this case. The trial court's decision on February 18, 2022, not only contradicted the agreement between the parties, but contradicted its own ruling as of May 25, 2021, almost a year prior, that the lease between the parties did not merge into a default judgment that was entered by the Court on April 29, 2014. I would point out that on April 29, 2014, the underlying court, the different judge, prior judge, had allowed for attorney's fees in connection with that judgment. That judgment was not reversed or vacated. There was a request to vacate the judgment, but that was eventually dropped. So the underlying contract had been ruled on by the first judge saying that we're entitled to fees. The trial court that vacated the judgment or that found that the judgment was satisfied on February 18 had already decided that the fees were allowable and had not changed its mind until months afterward. We do not believe that the judge even had the authority to change his opinion, but the court did rule very specifically that the language was clear on May 25, 2021, and refused on three separate occasions, three successive motions for that it would not reverse its ruling that LACO was entitled to fees. And what had happened, sadly, is that in the fall of 2021, the court wanted the parties to settle, which I don't blame the court. We wanted to settle as well. But what the court said was that once the settlement did not prove to be fruitful, that the court might reconsider its prior ruling on fees. And that's exactly what the court did. But it did so months after the court had already decided that the judgment was satisfied. I would point out that even the motion that was filed to tender the amount of the interest sought alternative relief, which we did not disagree with that would allow us to receive the funds. We would of course credit the defendants, but it would be without prejudice our rights to fees under the contract, as well as our rights to the contract rate of interest. The fact of the matter is your honor, that the law in Illinois is also very clear. And it goes back to the case of Vernon v. Schuster. Vernon v. Schuster is an Illinois Supreme Court case that says that when you have a successor, that the successor cannot evade its liabilities through a mere change of form. And what's different about this case and every other case that's cited in our brief is that this case in some sense is a case of first impression. And I would add that I hope it's a case of last impression, because this isn't a case where there was a transfer of assets with contracts and agreements transferring assets. It was simply a name change. That's all it was. We obtained a judgment on April 29th. We served a citation on an entity named Scholey. Scholey paid the defendants approximately $4 million a year. And on the very day that they were serving the citation, the defendants, MLK Distribution and Scholey just changed the name and then said that the contract was with an entity by the name of MLK Freight Lines Corp. It's not just the successor. It's the same entity. It's a name change. That's all it is. And what the defendants are trying to do is trying to use the fact that there was a judgment that was entered and the payment of the amount of the judgment plus their liabilities. That's not what Illinois law says. And it doesn't bear out with the facts in this case. And what I'd like to do, if you wouldn't mind, I'll let you go through. In the other proceeding, obviously there's your attempts to collect resulted in other proceedings, correct? Yes, that's correct. There was an action that was filed. Sure. And ultimately you were successful in at least getting to the proper entity, albeit with probably what you would characterize as some significant effort, correct? That's true. It took us approximately seven years to do that. And what had happened was it wasn't just that we were successful before it was Judge Fullerton. Judge Fullerton did grant our motion judgment and did rule that MLK Freight Lines Corp was a successor in that the principles, Mr. Maselli and Mr. O'Keefe were all three of those granted the piercing action, but the defendants themselves on January 19th, 2021 stipulate there's a court order stipulating that MLK Freight Lines Corp is a successor. And most importantly, that LACO was entitled to file a fee application and LACO did. And it filed its fee application on January 19th, 2021. And the court ruled in LACO's favor and the court ruled in LACO's favor because of what, and I know this is going to sound like a very big word, but that's the language in the center point case, the contumacious behavior of the defendants in evading the judgment, stating that one entity owned trucks and another entity didn't own trucks, and that one entity was involved in brokerage and the other was involved in freight. All that turned out to be a lie. Not a single bit of it was true. What had happened was that MLK distribution was and still exists to this day. And in the fall of 2021, there was even a sign. Everything in the record shows that they did nothing, but just changed the name. And in fact, three weeks ago, three weeks ago, Sholey, the entity that we served a citation on, filed a brief before this court stating that it was a name change. And the fact of the matter is that is exactly what occurred here. And it took us eight years of constantly being told things that were not true. And like whack-a-mole, every time we prove something was true, there would be a change. And in fact, if you look at, and I think the most damning piece of evidence occurred in this case on February 14th of 2022, in which the defendants filed a motion pursuant to rule 3.3 of the rules of professional conduct, in which they stated that in fact, all of the statements that they had made about truck ownership in MLK freight lines, but not in MLK distribution, were not true. That in fact was true, but it took us eight years before there was finally that admission. And what the defendants asked the court to do was to withdraw those admissions. And what the court said is, no, I will not let you withdraw those statements. The record here is unbelievable. The number of lies by the principals, lies to the court, it's just shocking beyond belief. And the argument that somehow LACO should be penalized because it sought its remedies under its contract, which the underlying trial court had given it in 2014, and the judge in this case had given it in May of 2021, should remain standing. And your honor, I would ask to reserve the balance of my time for rebuttal unless the court has any other questions. Just one quick question. So I hear everything that you've said, and I'm gonna go back to a job isn't to decide who's going to heaven and who isn't, who's immoral or bad and who isn't. Aren't we really talking your whole, what this all very complicated and lengthy comes down to is an interpretation of 1601, right? The clause in the contract, isn't that what we have to interpret to decide this appeal, 1601? I think the answer is that I expect the court to interpret 1601. I expect that. But I also believe that since the original trial court in 2014, granted fees, professional fees in 2014, and that ruling was never appealed or vacated, that the underlying interpretation of that agreement has since passed. It is raised to the cotta. It's no longer subject to appeal, but it was raised and it was argued throughout this case. And we believe that the judge, the underlying judge in 2021 made the correct decision, which was basically parallel and consistent with the original judge in 2014. You're on until he changed his mind until he changed his mind, but only after the fourth motion. But what's important, and this is a little bit concerning because if this matter does go back, we will obviously be back before the same judge. There was a very clear hearing here on it. There was a transcript of it. We cited in our brief and what had happened was the judge started out by saying, I'm not changing my mind. This was in connection with the third motion to reconsider and the court said, I'm not going to change my mind. I'm stuck with my ruling. That's it. And then as the hearing went on, the judge said, but you know, if I change my mind, things will change quickly and what the court was saying. And then the court says to us in the I believe it was at a subsequent hearing, it may have been in January that the court was going to change its mind. And that appeared to be based on the fact that the parties were not going to sell. And it did it. We're concerned because we never disclosed any of the settlement discussions or the settlement amounts. And unfortunately, what had been blurted out on two separate occasions was the exact amount that the defendants were willing to settle it. We did not take the bait. We did not state what our position was. We did the right thing. But the fact is, is that that is what I believed changed the court's ultimate mind. But the limited issue, at least in terms of this appeal, is that the February 18th judgment or ruling that the judgment had been fully satisfied should be vacated. And it should be vacated for the two premises that the contract did not merge into the lease, that interest continued and the attorney's fees were allowable to to Laco. And that because of that, the court should never have made a finding that the judgment was satisfied and the court should have done what we had asked, which was to say that the matter was partially satisfied. We were we wanted the funds. We want to move this case along. We want to see this end, because at the end of the day, we're looking at probably 10 years before this matter is finally over. I see that my time is almost up, and I'd be happy to answer any questions the court has. Any further questions from the court? No, thank you. You'll have time and reply. Thank you, Your Honor. Mr. O'Call, is it? Yes, Your Honor. Okay. May proceed. Good morning. Timothy O'Call, O-K-A-L. I represent the Appalese. May it please the court and counsel for the Appalant. I'd like to bring open my argument, point the court's attention to the fact that on April 18th of 2022, two things occurred. The court denied the Appalant's motion to reconsider the entry of the order on February 18th, 2022, which is the satisfaction of judgment, but the circumstances were changed. As of April 18th, 2022, when we appeared on their motion to reconsider the court's entry of that order of satisfaction of judgment and dismissal, the full entire underlying judgment and all statutory interest had been paid. The court then ruled that Section 16 vacated the May 25, 2021 order, vacated in its entirety, and ruled that attorney's fees were not awardable under Section 1601 of the lease. After making that determination and adjudicating the application of Section 1601, then and only then, the court then proceeded to deny the motion to reconsider the court's prior order entering satisfaction of judgment. So I submit, as I set forth in paragraph 9 of our Appalese brief, in response to their opening brief, on that particular date, even if the lease, Laco argues interestingly enough, even if the lease did not merge into the April 29, 2014 judgment, that judgment was entirely extinguished at that point because the full judgment had been paid, all statutory interest was paid, and the court had ruled that Laco was not entitled to any further interest fees or costs under Section 1601. What do you say to the argument that Judge Fullerton's ruling way back when as to professional fees as the law of the case or res judicata, it should not have been revisited subsequently? Well, are you talking about the April 29th judgment, 2014? Yeah. There's a significant difference there, and the Steiner versus Maniscalco case recognized that. There is a huge difference between a pre-judgment proceeding and a post-judgment proceeding to collect on the judgment. We do not dispute. In fact, it was an ex parte judgment. I did not represent, unfortunately, the defendant at the time. The judgment was entered ex parte, nobody appeared for the defendant in April of 2014. The judgment was entered, and pursuant to the terms of the lease, they got their fees that are awardable under Section 1601 of the lease. That's because at that particular time, Laco was, quote unquote, enforcing its lease. And as I point out... So those professional fees for lease enforcement, yes, under 1601, for collections, no. That is correct. There's actually two phrases, which I'll get to within Section 1601. One relates to costs and expenses, including attorneys' fees incurred in enforcing the lease, and then costs and expenses incurred where Laco's made a party to a proceeding, which is not this case. As I point out, I believe in our appellee's brief. So the fact that professional fees and costs were is not dispositive of the issues before the court here today. In fact, when Laco begins with their opening brief saying that contractual interests and fees apply to the post-judgment collection action, they argue, without citation to any authority, that their post-judgment collection action is merely an extension of the prejudgment action. That's simply not the case. They cite no law, and that flies in the face of the Maniscalco decision, which recognized a significant difference between prejudgment and post-judgment. In that particular case, the plaintiff's attorney sought to argue that attorney's fees were The Steiner Court went out of its way to note that the plaintiff was trying to stretch the decision in that particular case, because that case clearly involved an award of prejudgment interest, and Steiner recognized that the case before it was a post-judgment action to collect. And of course, so therefore, the question regarding merger, as they want to argue that the lease did not merge into the judgment, that is simply contrary to Illinois law, the Doherty real estate management case. And it should be understood that the courts have ruled that a provision in the contract, at least the course is a contract, the reason that provision survives, the attorney's fees provision survives is because it's considered to be ancillary. And what does that mean? For example, in this particular case, when Lakehold Properties bought their action on the lease, they didn't bring it for breach of the lease because the tenant breached the attorney's fee provision. They brought the action because the lessee, the tenant, breached the provision concerning rent. The attorney's fees provision is considered ancillary to that. Once the court enters a judgment for breach of the lease or contract, whatever provision has been breached, then the ancillary provision attorney's fees kicks in. So that's the reason why every portion of that lease, Lakehold's lease, merges the April 29, 2014 judgment. The only provision that survived was the attorney's fees provision. Now they argue repeatedly, and counsel's done here today, regarding the history of the case and successor liability and mirror continuation and all the other arguments they make. The fact that they claim it took eight years to get what they wanted, which is not true. And the court can look at the record and see that if it chooses to do so, but it's actually irrelevant. The fact of the matter is that there's the existence of a successor relationship between MLK Distribution and MLK Freightlines does not create a liability for attorney's fees, because there's no exception to the American rule under Illinois law that exists merely because the corporation is brought into either a third-party citation or a subsequent proceeding, whatever it may be, fraudulent conveyance. There's no exception to the American rule simply because the other corporation was a successor of the predecessor corporation. That just doesn't exist. And while the Appalachian cites to Vernon versus Schuster, Vernon doesn't help here because it did involve an attorney's fees provision. There's no question what the law is concerning successorship, successor liability. The law in Illinois is clear on that. All the and state, Illinois, Ohio, Connecticut, Kansas, none of these cases involve an attorney's fees provision. And therefore, none of those cases addressed or attempted to address or needed to address the American rule, which by the way, Appalachians failed to do in their opening brief. So the point here is that, and I would point out, though I acknowledge that the attorney's fees provision survives, that doesn't mean that these are automatically collectible. As I said earlier, this is a post-judgment collection action, not a prejudgment action brought to enforce the underlying lease. And that's where the Steiner case comes in, which speaks to the fact that it would not accept the plaintiff's argument in Fontana versus TLD builders that because the attorney's fee provision existed in that case and was enforced, it should equally be enforced in Steiner. There is a big difference between prejudgment and post-judgment. In fact, even in Stein versus Spanauer, in that particular case, attorney's fees were awarded because they were incurred in the appeal process of the judgment, not collection on the judgment, but appeal process judgment. So I would submit that if, for example, the judgment against MLK distribution in April 2014 had been appealed by MLK distribution, LACO could have made a claim under the first phrase of section 1601 regarding enforcement of the lease. They could make a claim like they did in Spanauer to collect fees that were incurred for the post-judgment proceedings brought by the tenant and the appeal that LACO would have had to defend in order to enforce the judgment. As I mentioned, there are two phrases to the lease and the trial court recognized it because Judge Rome said repeatedly, we're not enforcing the lease here. We're trying to enforce a judgment and there's a big difference between the two. Section 1601 of LACO's lease says lessee further agrees to pay all costs and expenses, including reasonable attorney's fees, which may be incurred by or imposed on a lessor in enforcing this lease. That's phrase one. Then it goes on to say, or in any litigation to which lessor may be made a party. That's the second phrase. The first phrase would not have any application at all because we're not engaged in enforcing the lease because the lease merged in the judgment. Obviously, the appellants are the merger doctrine destroys their ability to claim fees under the first phrase of section 1601. The only phrase that's left would be the second phrase. Therefore, the question is whether or not this is a case, this is litigation to which the lessor was made a party. I addressed that in our appellee's brief, speaking to the concept of passive voice. The reason that is brought up is because in the laws as it pertains to the construction of contracts and leases a contract, you have to apply the ordinary recognized meaning. We're talking about common principles of grammar. I don't remember how old I was, but I bet this goes back, the passive voice probably goes back to maybe sixth or seventh grade. It's that fundamental. In this particular case, the language clearly speaks in the passive voice, namely, the lessor is the party acted upon. It is not the person engaging in the action. The post-judgment proceedings that were brought here in nature of a supplementary proceeding, a third party citation to discover assets, that wasn't even issued until November of 2018 against my client. That's when I came into the case. That's four years after the judgment was entered. That wasn't an action that was brought by MLK Freight Lines or MLK Distribution. It was brought by the lessor and LACO Properties. LACO Properties wasn't being acted upon, it was the actor. As a matter of common grammar, application of common principles of grammar, and the use of the doctrine known as passive voice, that provision of the lease simply does not apply to this situation. The best example of that would be the cases such as Steiner Electrical versus Maniscalco, even the Centerpoint Energy Services case. The other cases they cite are all cases in which the language in the attorney's fees provision was broad enough to include a post-judgment collection action. In fact, in certain instances, it spoke specifically to authorizing attorney's fees to collect on the judgment. In Bank of America versus WS Management, the maker of the note also shall pay on demand all costs of collection, including reasonable attorney's fees collections. In Steiner, it was a credit application that had specific language requiring the party to pay expenses incurred for collections. In Centerpoint, it was, quote, all costs and expenses incurred by the plaintiff, including reasonable attorney's fees to collect amounts due and owing. And in Lowrance versus Hacker, Federal Seventh Circuit case, the language stated the parties shall remain liable for reasonable attorney's fees should attorney be employed to enforce collection. The language in Section 1601 simply doesn't provide for that. In fact, and also under, I know I have maybe a minute left, the other situation here too is it speaks to the fact that fees are tacked on to last month's rent. Well, all the rent was incorporated into the judgment in April 29, 2014. There was nothing left to collect under that lease in terms of rent. Those two phrases are completely different phrase one doesn't apply to enforcement of a judgment. And phrase two would only apply if an action is brought against the lessor. And that situation didn't occur in this case. So for all of these reasons, we would submit that the court should affirm the court's order denying the motion to reconsider the April 18th order, excuse me, the February 18th order and allow the judgment to address them. Any questions from the court? I do not. Okay. Thank you, Mr. Delaro. You may. Thank you, Your Honor. I'd like to just make a couple of very quick points. The first point that was raised by Mr. Ockel was the phrase that the judgment entered on April 29, 2014 was an ex parte judgment. It was not. It was a judgment entered after service of process. The defendants filed a petition to vacate that judgment. They never sought to challenge the allowance of the attorney's fees in that it is simply not an ex parte judgment. And that is wrong and inconsistent with Illinois law. The second thing, Your Honor, is that with respect to the contractual language and what Mr. Ockel tries to do in all these cases, he says, well, this case has this particular language. This case has this particular language. The fact of the matter is that none of these contract provisions are exactly the same. They are different. And there is no discussion in any of these cases that says you need magic language in order to have your fees continue. And I would point out very specifically with respect to the Stein v. Spainover case. That case in particular is not a case that involves the name change that we have here. It simply says that the remedy in the contract continues on what does merge and what has been rejected throughout the cases, including by Judge Rome. Judge Rome never changed his ruling that the lease did not merge into the judgment. He specifically said that he believed that it did not merge into the judgment. But in the Stein v. Spainover case, the court said that the fees continued, that it's the borrowing of a cause of action that merges into a judgment, not the full contract. And what merged into the judgment, to the extent that anything merged into the judgment, it was the ability of the defendants to challenge the that they breached the lease. That's the only thing that was barred by that April 29, 2014 judgment. Because they simply changed their name, and to use a very, very bad example, and I've used this example before, it would be as though a party such as John Wayne Gacy were convicted of murder and walked into the court the day after and said, you can't pass judgment on me or pass sentence on me because I changed my name to Joe Smith. That's exactly what happened. And if you listen very carefully to what Mr. Ockel said in his argument, he never challenges the fact that there simply was a name change. And there is an implicit argument, he makes a comment about his clients four years after the fact. But we know, and it's now been established by a brief that was filed three weeks ago, that MLK Freight Lines was simply a name change. And in fact, what happened here, Your Honor, was that MLK Distribution, the judgment debtor, its principals filed false affidavits saying that it ceased doing business and they provided us with a certificate of dissolution. And a year later, they then moved in to North Carolina and reinstated the corporation. And that corporation, up until at least the fall of 2021, still had the signed MLK Distribution, still had the same phone number, still had absolutely everything the same. And in fact, the filings that they had with the Internal Revenue Service say that MLK Freight Lines Corp was a name change. And that's all it was. It cannot use any of these procedural technicalities as a defensive measure. And I see my time is almost up. And if the court has any question, we just ask the court to reverse the underlying ruling here. Any questions from the court? I have none. No, thank you. Well, thank you, counsel. Thank you, counsel, both for your arguments in this matter. This morning, you will be taken under advisement. A written disposition will issue. The clerk of our court will escort you now out of our remote courtroom. Thank you.